# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Ernest Bock, LLC,

      Plaintiff

v.

Paul Steelman, et al.,

      Defendants

Case No.: 2:19-cv-01065-JAD-EJY

**Order Granting the Motion for
Reconsideration, Denying the
Motion to Strike, and Granting in Part
the Motions to Seal**

[ECF Nos. 67, 69, 70, 71, 73]

Creditor Ernest Bock, LLC sues the Steelman family, as individuals and trustees, for allegedly transferring property, businesses, and other assets to various trusts in an effort to "hinder, delay, and defraud Bock's ability to recover on a [j]udgment" it obtained against them.[1] In my July 27, 2020, order, I granted the Steelmans' motion to partially dismiss Bock's fraudulent-transfer claims because those claims were time-barred under NRS § 112.230, Nevada's Uniform Fraudulent Transfer Act.[2]  In that order, I found that Bock had constructive notice of the transfers to the alleged spendthrift trust in January 2015 when the Steelmans recorded the conveyance of the property—more than four years before filing its complaint.[3] Bock now moves for partial reconsideration, arguing that constructive notice by recordation does not apply to creditor claims under §112.230 and it was not aware of the transfers until April 2019.[4]  The Steelmans oppose Bock's motion for partial reconsideration and, separately, ask me to strike portions of Bock's second amended complaint because it exceeds the scope of my July

---

[1] ECF No. 66 (initial second amended complaint).

[2] ECF No. 65.

[3] *Id.*

[4] ECF No. 70 (motion for partial reconsideration).

27 order.[5]  Both parties also move to seal various documents and filings.[6]  Because recordation does not constitute constructive notice for creditor-claimants under NRS § 112.230, I grant Bock's motion for partial reconsideration.  I also deny the Steelmans' motion to strike and grant in part the motions to seal.

**Background**[7]

This action concerns the unraveling of a 2011 financing agreement for an amusement-park development in Atlantic City, New Jersey.[8]  Paul and Maryann Steelman executed two guarantees in Bock's favor as security for a mortgage note for the project.[9]  In 2014, the Steelmans stopped making payments, so Bock sued in the Superior Court of New Jersey,[10] eventually obtaining an $11,831,365 judgment against the Steelmans.[11]  In April 2019, Bock sought to domesticate the award in Nevada.[12]

Seeking to collect on the judgment, Bock propounded information subpoenas on the Steelmans in April 2019.[13]  Bock alleges that the Steelmans' responses revealed that they had transferred some of their "interests into . . . [the] Paul C. Steelman and Maryann T. Steelman Revocable Living Trust, [the] Stephen P. Steelman Irrevocable Trust, [the] Suzanne T. Steelman Irrevocable Trust, [the] Steelman Asset Protection Trust [the SAPT], and ABC Trusts 1-10," to

---

[5] ECF Nos. 73 (motion to strike), 78.

[6] ECF Nos. 67, 69, 71.

[7] This is a summary of the facts alleged in the complaint and should not be construed as findings of fact.

[8] ECF No. 66 at ¶ 15.

[9] *Id*. at ¶ 21.

[10] *Id*. at ¶¶ 31–35.

[11] *Id*. at ¶¶ 26–27.

[12] *Id*. at ¶¶ 37–38.

[13] *Id*. at ¶ 43.

2

1   "hinder, delay, and defraud Bock's ability to recover" on the judgment.[14]  Not only does Bock

2   claim that these transfers are fraudulent under NRS § 112.180(1) and NRS § 112.190(1), but it

3   also alleges the same claims against Suzanne and Stephen (the Steelmans' adult children),

4   arguing that they accepted the transfers to shield those assets from Bock's post-judgment

5   collection efforts.[15]  Though Bock describes numerous transfers, they can be grouped into two

6   categories: (1) property transfers that occurred between 2013 to 2015 to the SAPT, and (2)

7   transfers to various other trusts.

8        In my July 27 order, I granted the Steelmans' motion to dismiss the claims centered on

9   the SAPT-transfers because they were time-barred under NRS § 112.230's four-year statute of

10  limitations.[16]  I also granted the Steelmans' motion for a more definite statement as to Suzanne

11  and Stephen's roles in the alleged fraud and for the undated transfer claims, giving Bock until

12  August 6, 2020, to file an amended complaint curing those defects.[17]  I denied its motion for

13  leave to file a second amended complaint without prejudice, noting that its new complaint would

14  need to be largely redrafted, given my order.[18]

15       Bock now moves for partial reconsideration, arguing that its claims were timely because

16  it lacked actual or constructive notice of the transfers until April 2019.[19]  In response, the

17  Steelmans argue that, under federal law, Bock had constructive notice of its claims in 2015 when

18  they recorded their property deeds and, regardless, Bock's claims are time-barred by NRS

19

20  [14] *Id.* at ¶¶ 40–41, 76.

21  [15] *Id.* at ¶¶ 8–9.

    [16] ECF No. 65.

22  [17] *Id.*

23  [18] *Id.*

    [19] ECF No. 70.

§ 166.170, which governs claims for fraudulent transfers to spendthrift trusts.[20]  The Steelmans also move to strike allegations in Bock's proposed second amended complaint, arguing that Bock failed to seek leave to file an amended complaint and that complaint exceeds the scope of my previous order.[21]  Finally, Bock moves to seal exhibits attached to its proposed second amended complaint and motion for reconsideration,[22] while the Steelmans seek to seal exhibits attached to the initial second amended complaint that I previously dismissed without prejudice.[23]

## Discussion

## I.    The motion for partial reconsideration [ECF No. 70]

Bock asks me to reconsider my July 27 order dismissing his SAPT-transfer claims as time-barred.  A district court "possesses the inherent power to reconsider, rescind, or modify an interlocutory order" over which it retains jurisdiction for "sufficient" cause.[24]  Reconsideration is appropriate if the court "(1) is presented with newly discovered evidence," "(2) committed clear error or the initial decision was manifestly unjust," or (3) is provided "an intervening change in controlling law."[25]  "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments;"[26] instead, a party seeking reconsideration must present "facts or law of a strongly convincing nature" that provide a "valid reason" why reconsideration is appropriate.[27]

---

[20] ECF No. 78.

[21] ECF No. 73.

[22] ECF Nos. 67, 71.

[23] ECF No. 69.

[24] *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

[25] *Sch. Dist. No.1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[26] *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

[27] *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

### A.    The July 27 order erroneously dismissed Bock's SAPT-transfer claims.

Under Nevada law, fraudulent-transfer claims brought under § 112.180(1)(a) are subject to two statutes of limitation.  NRS § 112.230(1)(a) governs fraudulent-transfer claims generally, requiring that claims be brought "within [four] years after the transfer was made or the obligation was incurred or, if later, within [one] year after the transfer or obligation was or could reasonably have been discovered by the claimant."[28]  But NRS § 166.170, which governs suits for fraudulent transfers of property to spendthrift trusts, requires that claims be brought within "two years after the transfer is made" or "six months after the person discovers or reasonably should have discovered the transfer."[29]  In my July 27 order, I declined to consider whether § 166.170's two-year limitations period applies to Bock's claims.  Instead, I held that Bock's June 2019 claims are time-barred under § 112.230(1)(a)'s "more generous" "four-year" statute of limitations because Bock had constructive notice of the Steelmans' transfers when they recorded their deeds in January 2015.[30]  Bock argues that this was error[31] because, under Nevada law, recordation of a deed does not constitute constructive notice to creditors of an allegedly

---

[28] Nev. Rev. Stat. § 112.230(1)(a).

[29] Nev. Rev. Stat. §§ 166.170 et seq.

[30] ECF No. 65 at 6.

[31] Bock also points out a clerical error in my order, which stated that "[t]he statute of limitations on Bock's fraudulent-transfer claims began to run in January 2015 and necessarily expired by January 2016."  ECF No. 65 at 6.  It should read "[t]he statute of limitations on Bock's fraudulent-transfer claims began to run in January 2015 and necessarily expired by January 2019."

fraudulent transfer under § 112.230(1)(a), and disputes of fact preclude application of § 166.170's statute of limitations.

> **1.  Bock did not have constructive notice of the transfers under NRS § 112.230(1)(a).**

Recordation of a deed under NRS § 111.320 does not constitute constructive notice to creditors bringing fraudulent-transfer claims under NRS § 112.230(1)(a).  As early as 1896, the Nevada Supreme Court interpreted Nevada's conveyance statute, then codified at § 2594 of Nevada's General Statutes, as "not intended to impart notice other than to subsequent purchasers and mortgagees."[32]  In *Crescent v. White*, the Nevada Supreme Court extended this holding to fraudulent-transfer claims, reasoning that the conveyance statute (now codified at § 111.320) does not "give[] notice to all persons in all situations."[33]  And although not in the context of a fraudulent-transfer claim, the Nevada Supreme Court in *Allen v. Webb* reiterated that "constructive knowledge of recording statutes is held to prospective purchasers of realty;" it "does not necessarily follow" that claimants in all other circumstances "are stuck with the same application."[34]  This application not only accords with the language of the recordation statute, which expressly notes that only "subsequent purchasers and mortgagees *shall be deemed* to

---

[32] *Wilson v. Wilson*, 45 P. 1009, 1010 (Nev. 1896); Dav. E. Baily, Compiler & Annotator; Hammond, John D., Compiler & Annotator.  General Statutes of the State of Nevada in Force from 1861 to 1885, Inclusive (1885).

[33] *Crescent v. White*, 493 P.2d 1323, 1323 (Nev. 1972) (quoting *Wilson v. Wilson*, 45 P. 1009, 1010 (Nev. 1896)) (internal quotation marks and citations omitted).

[34] *Allen v. Webb*, 485 P.2d 677, 682 (Nev. 1971); *see also Szanto v. Marina Marketplace 1, LLC*, No. 3:11-cv-00394, 2013 WL 6198834, at *4 (D. Nev. Nov. 26, 2013) ("[T]he constructive notice of the recordations of deeds that applies as between prior and subsequent purchasers for value do[] not apply to fraudulent[-]conveyance claims for the purposes of the discovery rule, except inasmuch as the fact of recordation might be admissible (though pitifully weak) evidence of actual discovery.").

purchase and take with notice,"[35] but it just makes sense.  Holding otherwise would require that creditor-claimants presume that debtors will seek to avoid paying their debts through fraudulent transfers, and that creditors must proactively track the recordation of all debtor properties if they want to preserve potential claims.

The Steelmans' exclusive reliance on *Latta v. Western Inv. Co.*[36] does not persuade me otherwise.  In *Latta*, the Ninth Circuit cabined its holding to California law, reasoning that California's probate-proceedings statute only requires "the posting of notice in three public places in the county" to constitute "constructive notice to the world and all interested parties" of the recordation.[37]  Though written broadly, there is no indication that *Latta*'s holding applies outside of California.  Nor do the Steelmans cite a single Nevada case adopting *Latta*'s reasoning with respect to constructive notice for fraudulent-transfer claimants, much less cite a case holding that recordation constitutes constructive notice for creditor-claimants under § 112.230.  Accordingly, based on the allegations in the complaint, Bock did not have constructive notice of the alleged transfers in January 2015 and could only reasonably discover them once the Steelmans responded to its subpoenas in April 2019.[38]  Bock's claims are thus timely under NRS § 112.230's statute of limitations.

---

[35] Nev. Rev. Stat. § 111.320 (emphasis added).

[36] *Latta v. W. Inv. Co.*, 173 F.2d 99 (9th Cir. 1949).

[37] *Id.* at 103 (citing Cal. Civ. Proc. Code § 1373 (West 1876)).

[38] ECF No. 66 at ¶¶ 43–46.

1          **2.**        ***Disputes of fact preclude application of NRS § 166.170's limitations***

2           ***period.***

3         The Steelmans also briefly resurface their argument that Bock's claims are untimely

4  under NRS § 166.170's significantly shorter statute of limitations, which applies to claims for

5  fraudulent transfers to spendthrift trusts.  Unlike § 112.230, § 166.170 expressly provides that

6  prospective claimants "shall be deemed to have discovered a transfer at the time a public record

7  is made of the transfer."[39]  While Bock functionally concedes that its claims would be untimely

8  under the strict application of § 166.170, it argues that the statute does not apply because the

9  spendthrift trust itself is invalid, given that the trust was created to hinder, delay, and defraud it.[40]

10  The Steelmans make no response to this argument other than to proffer deeds of transfer

11  indicating the trust's validity.[41]  But those deeds miss the point—Bock alleges that the deeds

12  themselves are invalid because either the trust "fails for illegality and the policy against

13  permitting unjust enrichment of a transferee" or "the transferor manifested an intention that a

14  resulting trust should not arise."[42]  Resolution of the invalidity of the SAPT-spendthrift trust is,

15  therefore, a factual inquiry, ill-suited to a Federal Rule 12(b)(6) dismissal premised on the rote

16  application of § 166.170's limitations period.  So I grant Bock's motion for partial

17

18

19

_____

20  [39] Nev. Rev. Stat. § 166.170(2).

21  [40] ECF No. 66 at ¶ 158.

     [41] *See, e.g.*, ECF No. 16 at 11 (citing Exs. A–C).

22  [42] ECF No. 34 at 4 (quoting Restatement (Third) of Trusts § 8 (2003)) (internal quotation marks

23  omitted).  The Restatement has been cited approvingly by Nevada courts.  *See, e.g.*, *Klabacka v. Nelson*, 394 P.3d 940, 953 (Nev. 2017); *Matter of W.N. Connell & Marjorie T. Connell Living Trust*, 393 P.3d 1090, 1094 (Nev. 2017).

1  reconsideration in full and permit that judgment-creditor to allege its fraudulent-transfer claims

2  regarding the Steelmans' SAPT-transfers.

3  **II.      The motion to strike Bock's second-amended complaint [ECF No. 73]**

4          The Steelmans move to strike portions of Bock's proposed second amended complaint,

5  arguing that it exceeds the scope and directive of my July 27 order and adds new parties and

6  claims, and that Bock failed to seek leave to amend its complaint.[43]  Federal Rule 12(f)

7  empowers courts to "strike from any pleading an insufficient defense or any redundant,

8  immaterial, impertinent, or scandalous matter."[44]  Courts also have "inherent authority" to

9  manage their dockets and regulate the parties' conduct.[45]  In its prior motion seeking leave to file

10 an amended complaint, Bock noted that it wished to add new parties and claims to its dispute.[46]

11 My July 27 order did not preclude Bock from doing so—I merely advised Bock that the amended

12 complaint did not remedy the pleading deficits identified in my order, that many of its claims

13 were barred, and that it needed to provide more detailed allegations about the roles Stephen,

14 Suzanne, and other trustees had in each transfer, as well as details about the undated transfers.[47]

15 And while the Steelmans are correct that Bock failed to seek leave to file its amended complaint,

16 my July 27 order was admittedly ambiguous about the correct filing procedure.[48]  The Steelmans

17

18 [43] ECF No. 73 at 6.

19 [44] Fed. R. Civ. P. 12(f); *see also* Fed. R. Civ. P. 7(a).

20 [45] *Metzger v. Hussman*, 682 F. Supp. 1109, 1111 (D. Nev. 1988); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (recognizing that federal courts have "certain implied powers" that
21 are "governed not by rule or statute but by the control necessarily invested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *accord*
22 *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).

   [46] *See* ECF No. 53 at 2–3.

23 [47] ECF No. 65 at 12.

   [48] *Id.*

provide no additional reasons why these new allegations are improper or analysis for why they might be prejudiced by these new allegations. So I deny the Steelmans' motion to strike the allegations in Bock's proposed second amended complaint.

## III.   The motions to seal [ECF Nos. 67, 69, 71]

### A.   Sealing standards

"The public has a 'general right to inspect and copy public records and documents, including judicial records and documents.'"[49] To seal documents related to dispositive motions, "[a] party . . . can overcome [this] strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[50] But to seal documents attached to non-dispositive motions, the Ninth Circuit merely requires a party to show "good cause" for sealing.[51] "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[52]

### B.   Motions to seal

Bock moves to seal (1) its initial second amended complaint and accompanying exhibits[53] and as an attachment to its motion for partial reconsideration, (2) its proposed second amended complaint and accompanying exhibits,[54] citing the Steelmans' confidentiality

---

[49] *In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

[50] *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[51] *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); and *Foltz*, 331 F.3d at 1135, 1138) (internal quotation marks omitted).

[52] *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[53] ECF No. 67 (seeking to seal ECF Nos. 66, 68). Bock has filed all exhibits under seal in one large document, failing to file them separately as individual exhibits. *See* ECF No. 68.

[54] ECF No. 71 (seeking to seal ECF No. 72).

designations under the parties' stipulated protective order.[55]  In response to these motions, the Steelmans only seek to seal the same ten exhibits attached to both filings, arguing that they contain sensitive financial information.[56]  They do not seek to seal the amended complaints. Additionally, and in response to my July 27 order requiring the Steelmans to show cause why Bock's reply briefing[57] and the exhibits supporting his initial second amended complaint[58] should remain sealed, the Steelmans argue that only seven exhibits should remain under seal because they too contain sensitive financial information.[59]  They do not seek to seal the reply briefing.

The Steelmans have shown compelling reasons to seal these documents.  The exhibits contain Paul Steelman's employment agreement; records regarding the Steelmans' assets and finances; tax documents reporting income, ownership, and distributions; and documents containing information revealing the Steelmans' social security numbers and their investments, assets, liabilities, securities, retirement funds, and loans.[60]  The Steelmans possess a legitimate privacy interest in these documents because they reveal sensitive, private, and personally identifiable information, which outweighs any concern over public access to the records.[61]  So I

---

[55] ECF No. 67.

[56] ECF Nos. 74, 77.

[57] ECF Nos. 56, 62.  Bock filed its initial second amended complaint and exhibits as large attachments to John F. Palladino's declaration and not, as it should have, to its motion for leave to file a second amended complaint.

[58] ECF No. 56

[59] ECF No. 69.

[60] *See* ECF No. 74 at 5 (listing the contents of the exhibits); ECF No. 77 at 5–6 (listing the contents of the exhibits).

[61] *See Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 301 F. Supp. 3d 759, 784 (S.D. Ohio 2018). Many courts have also recognized the strong interest in keeping personal financial records and

grant Bock's motions to seal in part, sealing the ten exhibits identified by the Steelmans in their

response to Bock's motion and the seven exhibits identified by their motion to seal, which they

filed in response to my July 27 order.  I deny the motion to seal the remaining exhibits, reply

brief, and both the initial and proposed second amended complaints.

### Conclusion

IT IS THEREFORE ORDERED that Bock's motion for partial reconsideration **[ECF No.
70] is GRANTED.  The portion of my July 27, 2020, order deeming Bock's fraudulent-
transfer claims time-barred and dismissing them with prejudice [ECF No. 65] is
VACATED**, and those claims are reinstated.  To the extent these previously dismissed claims

are not included in the second amended complaint [ECF No. 66], Bock may file a third amended

complaint to reinsert those claims.

IT IS FURTHER ORDERED that the Steelmans' motion to strike the second amended

complaint **[ECF No. 73] is DENIED.**

IT IS FURTHER ORDERED that Bock's motion to seal the second amended complaint

and motion to seal certain exhibits regarding the motion for partial reconsideration **[ECF Nos.
67, 71] are GRANTED IN PART,** and the Steelmans' motion to seal **[ECF No. 69] is
GRANTED.**   The parties are reminded that exhibits to a filing must be filed individually and

separately (e.g., ECF Nos. 68, 68-1, 68-2, etc., *see*  Local Rules IA 10-3; IC 2-2(a)(3)), and that

if a brief or pleading is filed under seal, the parties must file both a public/redacted version and a

sealed/unredacted version.  Accordingly, **by December 29, 2020, Bock is directed to:**

---

tax returns from public view.  *See, e.g.*, *Goodman v. J.P. Morgan Inv. Mgmt., Inc.,* 301 F. Supp.
3d 759, 784 (S.D. Ohio 2013) (citing cases).

- File a public version of the initial second amended complaint and accompanying exhibits. The initial second amended complaint and Exhibits 1–3, 5, 11, 13–15, 17, 20, 22, 24–25, and 27–28 should be unredacted except for information that must be redacted under LR IC 6-1.  For example, the address that is redacted on ECF No. 70-1 at 166 must remain redacted.  Exhibits 4, 6, 12, 16, 18, 19, 21, 23, 26, and 29 should be replaced with cover sheets that state the exhibit number and "filed under seal."  The document package should be filed under the event titled "Notice of Corrected Document" and linked to ECF No. 66.

- File under seal the initial second amended complaint and exhibits 1–29.  The document package should be filed under the event titled "Notice of Corrected Document" and linked to ECF No. 68.

- File an unredacted version of its proposed second amended complaint and accompanying exhibits.  The proposed second amended complaint and Exhibits 1–3, 5, 11, 13–15, 17, 20, 22, 24–25, and 27–28 should be filed without redaction except for information that must be redacted under LR IC 6-1.  Exhibits 4, 6, 12, 16, 18, 19, 21, 23, 26, and 29 should be replaced with cover sheets that state the exhibit number and "filed under seal."

- File under seal its proposed second amended complaint and exhibits 1–29.

IT IS FURTHER ORDERED that **the Clerk of Court is directed to LIFT THE SEAL on ECF Nos. 56, 56-1, 62**.  **The Clerk of Court is directed to MAINTAIN the seal on ECF Nos. 56-2 and 72**.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: December 23, 2020